RECEIVED

NOV 2 2 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

NOV 2 2 2016

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| GINO CAPOMACCIO, Individually § <br> § <br> Plaintiff, § <br> § <br> § <br> ~versus~ § <br> § <br> § <br> HORIZON HEALTH AUSTIN, INC. dba § <br> AUSTIN LAKES HOSPITAL § <br> § <br> Defendant § | A16CV1250 SS <br><br> CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW GINO CAPOMACCIO, Individually, and files his Original Complaint, complaining of Horizon Health Austin, Inc. dba Austin Lakes Hospital. Plaintiff respectfully pleads as follows:

### I.

### The Parties

1. Plaintiff Gino Capomaccio is an individual. At the time of the event, Mr. Capomaccio was a resident of Travis County, Texas. Since the accident, however, Mr. Capomaccio resides with his family in the city and state of Bergin, New York.

2. Defendant Horizon Health Austin, Inc. dba Austin Lakes Hospital is a behavioral health center. It is a Texas corporation, and its principal place of business is in Travis County, Texas. Plaintiff anticipates that the defendant will be served by agreement.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. 1332(a) because the suit is between Plaintiff, a resident of New York, and Defendant, a resident of Texas. Diversity is complete. The amount in controversy exceeds $75,000, excluding interests and costs.

4. Venue is proper in the Austin Division of the Western District of Texas because a substantial portion of the events forming the basis of the suit occurred in this Division and District.

## III.
## FACTUAL BACKGROUND

5. Gino Capomaccio presented to South Austin Medical Center Emergency Department by way of ambulance at 1:32 a.m. on September 12, 2014. Medical records document suicidal ideation, anxiety, and a history of bipolar disorder.

6. At 5:00 p.m. on September 12, 2014, Mr. Capomaccio was voluntarily transferred and admitted to nearby Austin Lakes Hospital, which offers a "continuum of psychiatric services" for adults. He was admitted to the "Acute 2nd" unit, one step below the Psychiatric Intensive Care Unit, with an admitting diagnosis of Bipolar Disorder and a "high risk behavior" of suicide. Medical records also note a cognition/attention impairment notation of "impaired judgement."

7. While at Austin Lakes Hospital, Mr. Capomaccio began a prescribed regimen of medications, including Imitrex, Topamax and Effexor.

8. Based upon information and belief, Mr. Capomaccio was moved from one room to another, due to a concern about an unidentified aggressive patient.

9. While alone, and without warning or provocation, Mr. Capomaccio was violently assaulted by another unmonitored patient. (Due to HIPAA restrictions, Plaintiff has been unable to obtain the identity of the patient who attacked Mr. Capomaccio; therefore, in this Complaint, that patient will be called "Patient X"). The Austin Lakes Hospital Discharge summary, dated September 13, 2014, states in part: "One of the patients attacked him from nowhere, without any provocation and hit him into the side of his head [sic] and he was unconscious for about 5 minutes according to the staff, and he was transferred to St. David's ER for evaluation, and he was admitted because of subdural hematoma and subarachnoid hemorrhage and interspheric hemorrhages."

10. Mr. Capomaccio's medical records at St. David's state, in part: "The patient was punched on the face by another patient. Trauma occurred to the left side of the face, jaw and neck. After the trauma, the patient lost consciousness and had transient amnesia and unable to recall the event." Acute hemorrhagic contusion of the inferior frontal lobes, which is traumatic with subarachnoid hemorrhage, was confirmed.

11. Mr. Capomaccio was hospitalized for seven days at St. David's, at which time he returned to Bergin, New York, so that continued care near his family could occur.

12. Mr. Capomaccio has received ongoing continuing care at Unity Rehab and Neurology at Ridgeway in Rochester, New York.

13. Unity Rehab records from February of 2015 state, in part, "Assessment: Brain Injury with coma, Severe." "You have sustained a significant brain injury that has worsened your headaches, and also resulted in insomnia, depression, anxiety, and likely impairment of your thinking and memory."

14. Since the time of the attack, Mr. Capomaccio, age 51, has been unable to return to work or live a completely autonomous life.

## IV.

## CAUSES OF ACTION -- MEDICAL NEGLIGENCE

15. This is a case that involves allegations of Medical Liability as defined by Chapter 74 of the Texas Practice and Remedies Code. The events that form the basis for this case occurred on September 12 and 13, 2014.

16. On September 8, 2016, a notice letter and medical authorization compliant with § 74.051 was sent to Austin Lakes Hospital. That letter tolled the Texas two year limitation period 75 days such that this case is timely filed.

17. Paragraphs 1 through 14 are incorporated herein as if fully alleged.

18. The defendant owed Mr. Capomaccio, vicariously through its individual health care employees, a duty to provide the highest quality of patient care and maintain a safe environment for its patients. The defendant, vicariously through its individual health care employees, breached that duty to Mr. Capomaccio as follows:

   a. Failing to ensure that Mr. Capomaccio was protected from other violent patients;

   b. Failing to secure and monitor Mr. Capomaccio in a safe area;

   c. Failing to adequately evaluate Patient X for possible violent tendencies in a behavioral health care setting;

   d. Failing to restrict Patient X from unmonitored access to Mr. Capomaccio, who was a vulnerable patient unable to protect himself.

In this case, the plaintiff was injured as a result of a tort, the tortfeasor(s) responsible for the breaches outlined was an employee(s) of the defendant, and the tort(s) was committed while the employee(s) was acting with the scope of her or his employment.

19. The defendant, as a health care institution, owed Mr. Capomaccio a duty to to establish, maintain and evaluate a system that provided the highest quality of patient care and maintain a safe environment for its patients. The defendant, as a health care institution, breached that duty to Mr. Capomaccio as follows:

   a. Failing to establish, maintain and evaluate a system that ensured Mr. Capomaccio was protected from other violent patients;

   b. Failing to establish, maintain and evaluate a system that ensured Mr. Capomaccio remained in a safe, secure and monitored area;

   c. Failing to establish, maintain and evaluate a system that resulted in the adequate evaluation of Patient X such that he would be prohibited from accessing and injuring vulnerable patients in a behavioral health care setting;

   d. Failing to establish, maintain and evaluate a system that resulted in the restriction of Patient X from unmonitored access to Mr. Capomaccio, who was a vulnerable patient unable to protect himself.

20. The breaches outlined in paragraphs 18 and 19 above were a proximate cause of Mr. Capomaccio's assault and his resulting injuries and damages.

## V.

## DAMAGES

21. Paragraphs 1 through 20 are incorporated herein as if fully alleged.

22. As a result of the breaches of the standard of care alleged, and his resulting injury at Austin Lakes Hospital, Mr. Capomaccio has incurred the following compensable damages:

    a. Past medical expenses;

    b. Reasonably anticipated future medical and life care expenses;

    c. Past loss of earnings;

    d. Reasonably anticipated future loss of earnings or earning capacity;

    e. Past non-economic damages, including physical pain and mental anguish, as well as physical impairment. These damages are alleged against both individual health care providers vicariously, as well as directly against the health care institution;

    f. Reasonably anticipated future non-economic damages, including physical pain and mental anguish, as well as physical impairment. These damages are alleged against both individual health care providers vicariously, as well as directly against the health care institution;

## VI.

### Pre-Judgment and Post-Judgment Interest

23. Plaintiff seeks pre-judgment and post-judgment interest in accordance with the maximum legal interest rates allowable.

## VII.

## Prayer and Jury Demand

24. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein and that a jury of the Plaintiff's peers be convened for trial. Further, that upon final trial of this cause, Plaintiff has judgment against Defendant for damages as described, costs of suit, pre-judgment and post-judgment interest at the maximum legal rates.

Respectfully submitted,

William Kenneth C. Dippel
State Bar No. 05894500
Board Certified, Personal Injury Trial Law,
   Texas Board of Legal Specialization
Pro Hac Vice Motion and Application for
Admission to the Western District, Austin
Division, filed and pending

12221 Merit Drive, Suite 670
Dallas, Texas 75251
(972) 866-9900     Phone
(972) 866-9902     Fax

wkcd@wkcd.net

COUNSEL FOR PLAINTIFF